**Wayne Bruce JOHNSTON, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. C14–82–094CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 10, 1982.

Before MILLER, ROBERTSON and JAMES, JJ.

ROBERTSON, Justice.

In a trial before the court, appellant was convicted of possession of cocaine and punishment was assessed at three (3) years confinement, probated, and a fine of $500. We affirm.

Appellant brings three grounds of error, all of which contest the validity of the search and will be discussed together.

The case was tried before the court, 640 S.W.2d 893, on stipulated facts developed at the motion to suppress evidence hearing. The evidence developed at the hearing shows that on January 31, 1981, at approximately 11:45 p.m., Houston Police Officers Robinnette and Runyun were on routine patrol in the city "north of downtown, around the Heights," when they saw appellant and another male named Templeton standing on a business parking lot, illuminated by spot lights across the front. This lot was used for parking by some of the customers of a night club located some 50 to 75 yards away. Twenty-five or thirty cars were parked on the lot, and appellant and his companion, the only persons on the lot, were standing "right behind one white small compact car." Officer Robinnette testified the first thing "that got our attention when we saw the defendant" was that "we have had problems with cars being stolen from that area ... less than one block's distance." Robinnette testified the officers "made eye contact" with appellant and his companion and, from about thirty feet away, observed appellant's companion drop a bag of a type familiarly known to the officers as the kind used to possess drugs. "[H]e dropped it under the car with his hand, just flicked it under, right under the bumper of the car and then he just pretended like as if nothing had happened and just, he stopped, he had stopped the conversation and pretended like we weren't there," even though the officers were in a marked patrol car. The officers then got out of their auto and, as they approached within "four or five feet" of appellant and his companion, smelled "a strong odor of what appeared to be marijuana coming from the two suspects." He further testi-

fied that as Officer Runyun was retrieving the bag tossed under the car, he told appellant to turn around and place his hands on the auto and he began his patdown search "for my own protection." As he was conducting the patdown search, Officer Runyun opened the retrieved bag and found "a couple of vials with a white powder substance which I believed at that time could be cocaine." The exact sequence of events is unclear, but after Robinnette "searched around the belt area and then around the waist and then around the pockets, around the collar, arms," he patted appellant's hip pocket, feeling a wallet and "behind the wallet there was some sort of object, hard small round object approximately an inch in length and maybe a half inch diameter" which he retrieved from inside the hip pocket along with the wallet. Robinnette testified that he removed the wallet because "many times I have seen weapons, wallets that had knives or pistols inside." He opened it and, seeing no weapon, handed it to appellant. He retrieved the hard round object because "it might have been a bullet—and if I had found a bullet in someone's pocket it would lead me to believe that perhaps he had a gun on him, perhaps a gun, I had not searched at that time, maybe in his shoe." This object turned out to be a plastic vial containing a white powder. Officer Runyun searched Templeton and recovered "some marijuana and some hashish" from him. The officer further testified that as he and Runyun approached appellant and Templeton, both appeared nervous.

By written stipulation it was sufficiently shown that the substance that Officer Robinnette seized was cocaine. Further, it was established that appellant was not "free to go" and would have been detained from the moment the officers got out of their car.

Appellant, in a well written brief and in argument before this court, contends: (1) the initial seizure of appellant was not based upon a reasonable and articulate belief of the officers to justify constitutionally restricting his freedom of movement in a

significant way; (2) having no objective evidence that appellant was armed and dangerous, and not having seen bulges of any nature on his person, and not having probable cause to believe a crime was occurring in his presence, the officer was not justified in performing a frisk of appellant's outer garments nor in searching his inner pants pockets and (3) mere odor of burned marijuana alone upon a person does not create a status or condition for which an arrest on the basis of possession is justified. The state counters with the argument that the investigative detention was "a process consisting of several steps, and at each step the officers had a reasonable and adequate basis for taking action."

In our view, the validity of the search in this case is dependent upon the reasonableness of the initial determination of the police officers to investigate further their threshold observation of appellant and his companion. For if they were justified in this initial action, each successive step taken by the officers was further justified by additional factors occurring in stairstep fashion.

Only last year the Supreme Court again spoke quite clearly concerning probable cause to conduct an investigative stop in the case of *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981):

> Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person. Terms like "articulable reasons" and "founded suspicion" are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise. But the essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. (citing cases)

> The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon *all the circumstances. The analysis proceeds with various objective observations, information from police reports,* if such are available, *and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person.*

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

> The second element contained in the idea that an assessment of the whole picture must yield a particularized suspicion is the concept that the process just described must raise a suspicion that the particular individual being stopped is engaged in wrongdoing. (Emphasis added.)

While it could be argued with reason that an investigative detention as shown by the facts in this case is less obtrusive than an investigative stop, as in the cited case, we need not so decide.

■ The very purpose of having police officers on patrol is to provide security to the citizens and to detect evidence of crime being committed. While the objective observation of two persons standing behind an automobile on an otherwise deserted parking lot at 11:45 p.m. provided, by itself, no suspicious circumstances, when that fact is coupled with the knowledge that the officer had investigated other cases of auto theft and autos being "stripped" in the immediate area, the officer had sufficient cause to observe appellant and his companion more closely. When he established "eye contact," he observed appellant's companion drop or

toss a small cloth bag under the automobile, an objective fact. The officer, having seen similar bags used for carrying drugs, determined that he should investigate further, and as he got within four of five feet of appellant and his companion, the officer objectively observed the strong odor of marijuana about appellant and his companion. We hold that these facts were sufficient to authorize the officers' detention of appellant and his companion for the purpose of investigating the contents of the bag discarded under the automobile.

This brings us to the reasonableness of the action of Officer Robinnette in conducting the patdown search of appellant. The authority for a patdown search is *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), where the Supreme Court stated:

> Where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activities may be afoot and that the persons with whom he is dealing may be armed and presently dangerous ... he is entitled for the protection of himself, ... to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. *Id.* at 30, 88 S.Ct. at 1884.

Whether he has reason to believe he may be in danger, the officer is entitled to consider the "totality of the circumstances." *Wimberly v. State*, 434 S.W.2d 857 (Tex.Cr.App. 1968). Moreover, the reasoning of the Supreme Court in *United States v. Cortez, supra*, in determining probable cause to conduct an investigative stop is applicable in determining the adequacy of the officer's belief justifying a patdown, i.e., he is entitled to draw upon various observations, both objective and subjective. In addition to what has already been said justifying the determination to detain appellant and his companion, the officer was also authorized to deduce that if he and his partner had just observed some type of drug offense, then appellant and/or his companion could well be armed. As he was conducting the

patdown of appellant, his companion officer retrieved the bag from under the auto, and they observed vials containing a white powder believed to be cocaine. This cocaine was not removed as a result of any search, legal or illegal. The officer testified he had previously observed wallets to be so constructed as to hold a pistol or knife, and we hold that based upon this record, it was not unreasonable for the officer to remove it, open it to see if it was so constructed, and then hand it to appellant. We further hold that when the officer felt the hard object in appellant's hip pocket, which he believed "could be" a bullet, he was authorized to remove it to ascertain if it was, in fact, a bullet. He was authorized to deduce that if in fact it was a bullet, there was a greater likelihood appellant was armed and a more thorough search was demanded for self-protection. Accordingly, we hold that the evidence was lawfully obtained and the trial court did not err in refusing to suppress evidence obtained from the search.

On the basis of the record before us, we are not impressed with appellant's argument that "mere odor of burned marijuana alone upon a person creates a status or condition for which an arrest on the basis of possession is unjustified." The smell of the marijuana alone did not justify any of the actions of the officers. It was merely another objective fact upon which the officer was entitled to rely in determining his course of action.

The judgment is affirmed.

JAMES, Justice, concurring.

I concur with the result reached by the majority of this panel but I respectfully disagree with the reasoning set forth in the decision.

I am in complete agreement with the majority opinion's presentation of the facts. However, the court reasons that the evidence obtained as a result of the search is admissible under the authority of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The search in the instant case was too extensive to come under the authority of a patdown search. I believe that

there was sufficient probable cause to arrest appellant and thereafter search his person pursuant to that arrest.

For that reason, I would overrule appellant's sole ground of error and affirm the conviction.

I concur in the result only.